BRADLEY D. KOLTON, Plaintiff-Appellant, *v.* K & L FURNITURE & APPLIANCES, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 78-1203

Opinion filed December 21, 1979.—Rehearing denied April 8, 1980.

Ira Marcus and Lance M. Green, both of Chicago, for appellant.

Michael L. Weissman and Robert A. Pond, both of Boorstein & Weissman, of Chicago, for appellee Commercial Credit Business Loans, Inc.

Joel S. Siegel, of Arvey, Hodes, Costello & Burman, of Chicago, for appellee Nationwide Acceptance Corporation.

Leo H. Feldman, of Teller, Levit & Silvertrust, and Louis I. Kessler, both of Chicago, for appellee Bernard C. Chaitman.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff appeals from an order granting the motion of three defendants, Bernard Chaitman (Chaitman), Nationwide Acceptance Corporation (Nationwide) and Commercial Credit Business Loans, Inc. (Commercial) to dismiss the first four counts of a six-count amended complaint. The counts sounded respectively in breach of an alleged common law duty of good faith, common law fraud, breach of good faith allegedly created by the Illinois Uniform Commercial Code and violation of the Uniform Commercial Code in that the sale of the accounts receivable to Nationwide was commercially unreasonable.

On appeal plaintiff raises two issues, but it is only necessary that we consider plaintiff's contention that the trial court erred in granting defendants' motion to dismiss counts I through IV of the complaint since the order of dismissal presents only this question. We affirm in part and reverse in part. The pertinent facts follow and are undisputed.

Plaintiff is a creditor of defendant K & L Furniture & Appliances, Inc. (K&L), having loaned to K&L the aggregate amount of $215,000. On September 30, 1975, plaintiff received a promissory note from K&L in that amount bearing interest at 5% per annum and becoming due on September 30, 1978. Payment of the note was guaranteed by Sander Kolton[1] (Kolton), an officer, director and shareholder of K&L. As further security, plaintiff received 12,500 shares of K&L common stock from Kolton endorsed in blank. The shares represented 50% of the voting stock of K&L.

Prior thereto, on June 13, 1972, Commercial entered into an inventory collateral security agreement and a revolving loan agreement with K&L. In accordance with these agreements sums were advanced by Commercial to K&L and Commercial obtained a lien (security interest) upon all of K&L's owned and after-acquired inventory and accounts receivable.

In August of 1977, plaintiff received a letter from defendant Chaitman informing him of the insolvency of K&L and that because of its failure to continue in business, K&L had completed an assignment for the benefit of creditors to Chaitman. Chaitman also indicated that the only creditor who would receive any satisfaction from the assets of K&L was Commercial. He further stated that there might be a deficiency due the secured creditor. The principal asset owned by K&L was $2,700,000 of accounts receivable in the form of retail installment sales contracts and the approximate debt due Commercial, the secured creditor, from K&L was $1,350,000.

On October 26, 1977, plaintiff filed his complaint seeking an injunction and a motion for a temporary restraining order. The initial complaint alleged, in relevant part, that: (1) defendants failed to give plaintiff advance notice of the assignment for the benefit of creditors; (2) defendant Chaitman was collecting the accounts receivable and paying the proceeds to Commercial and (3) plaintiff was informed and believed that Commercial and K&L were contemplating a further assignment of the receivables to a third party.

The trial court held a hearing on October 26, on the motion for a temporary restraining order. Prior to the hearing, counsel for Commercial

---

[1] Sander Kolton, the father of plaintiff, is a defendant herein as is Bernard Liss, another director, officer and shareholder of K&L. Both served notices of filing their personal petitions in bankruptcy and thus, pursuant to Federal Bankruptcy Rules, restrained plaintiff from proceeding against them personally.

provided plaintiff a copy of the proposed contract between Commercial and Nationwide. At the hearing, the court was advised that the further assignment to which plaintiff referred in his complaint was the proposed sale of the uncollected accounts receivable by Commercial to Nationwide for $872,000, which sale was scheduled to occur on October 27. The court was further informed by several of the defendants that the accounts receivable were questionable, the $872,000 bid was the best price obtainable, and delay of the scheduled sale could result in further depreciation of the receivables. Plaintiff's principal objection to the proposed sale was that the sale price left no surplus for creditors such as plaintiff and that other avenues should be explored.

Following the hearing, the trial court denied plaintiff's motion for a temporary restraining order and dismissed the case without prejudice. The court made no findings in granting the dismissal. On October 27, Commercial consummated the sale of the receivables to Nationwide.

On November 22, plaintiff presented a motion to vacate the dismissal of his action and for leave to file an amended complaint. This motion was granted and plaintiff filed his amended complaint on December 2. The allegations of the amended complaint were virtually identical to those of the initial complaint, except that it alleged that the sale of the accounts receivable by Commercial to Nationwide was concealed from plaintiff until the sale was completed and that it was not a commercially reasonable sale.

Defendants Commercial, Nationwide and Chaitman moved for summary judgment as to counts I through IV, which motion was granted on January 18, 1978, and the case was dismissed as to those defendants. Based on a motion heard January 24, plaintiff obtained an order from the court vacating its January 18 order granting summary judgment in favor of defendants and allowing plaintiff until January 30 to file discovery requests and a proper affidavit under Rule 191(b) of the Illinois Supreme Court Rules. Ill. Rev. Stat. 1977, ch. 110A, par. 191(b).

On February 1, defendant Chaitman filed his motion to dismiss the amended complaint, counts I through IV, pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45). Commercial and Nationwide joined Chaitman in the motion, and it was heard on February 8. At the conclusion of the hearing, the court granted the motion, dismissed counts I through IV, but allowed plaintiff 14 days in which to file a second amended complaint. The trial court did not state the reasons for striking these counts. By an order dated February 23, plaintiff was given until March 14 in which to file the amended pleading.

On March 14, plaintiff filed a motion urging the court to reconsider its order dismissing counts I through IV. The motion was denied and plaintiff was granted until April 11, in which to file his second amended

complaint. On April 11, plaintiff filed a petition for change of venue. Separate motions were then filed by Commercial, Nationwide and Chaitman seeking an order dismissing counts I through IV with prejudice and without leave to amend. On April 18, the trial court denied plaintiff's petition for change of venue and ordered the cause dismissed with prejudice. Plaintiff now brings this appeal.

Opinion

Plaintiff contends that the trial court improperly granted the motion to dismiss counts I through IV of plaintiff's complaint for failure to state a cause of action. Initially, plaintiff argues that the court erred by commingling a motion to dismiss with a previously filed and partially considered motion for summary judgment. Plaintiff asserts that the trial court actually made factual conclusions and was really granting summary judgment under the pretext of allowing the motion to dismiss. We do not agree.

■■ .In support of this contention, plaintiff principally relies on statements by our supreme court in *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605, as dispositive of this question. In that case, the court disapproved of the trial court's procedure of combining a ruling on a motion to dismiss with a ruling on a motion for summary judgment. There, each of the defendants filed a motion to strike and dismiss the amended complaint and for summary judgment in the same pleading and the trial court heard both motions simultaneously and decided both motions at the same time. Our supreme court held that the motion for summary judgment and a motion to dismiss should not be simultaneously entertained because to do so is likely to confuse both the parties and the court. Despite the condemnation of the procedure, however, the court affirmed the dismissal of the complaint as to some of the defendants and did not hold that combining the two motions would constitute reversible error. Plaintiff's reliance on the *Janes* decision is misplaced since it is distinguishable on its facts from the pending matter. Here, defendants filed motions for summary judgment and then Chaitman presented his motion to dismiss. Before presentation and hearing on the motion to dismiss there had been argument on the motions for summary judgment. Nevertheless, when counsel for Chaitman began the argument on his motion to dismiss, the purpose and scope of his motion was clearly stated as follows:

> "MR. FELDMAN: * * * This is only a motion to dismiss. I don't know that we need any evidence. For purposes of our motion, we are willing to concede any well-pleaded fact, if it is well pleaded."

Similarly, the trial court's decision at the end of the hearing does not reflect any confusion:

> "THE COURT: * * * My only conclusion is as far as what I have heard today is concerned, I think that the motion to strike the counts of the amended complaint, 1 through 4, should be granted.
>
> I am not disposed to make a final disposition of the whole matter because of the fact that *I think plaintiff should have the opportunity, if he is able to do so, to put before the Court what would amount to a concise and coherent presentation of his claim*, but I'm frank to say that The Court has heard it, The Court does believe that the question as to what is wrong in what has happened, not what disadvantage may have occurred to the plaintiff, but *what unlawful or improper thing has been done is something that does have to be set before The Court.*" (Emphasis added.)

Furthermore, the trial court's order reflects clarity in stating that the matter came before the court on a motion to dismiss and four of the six counts of the amended complaint were dismissed but that plaintiff was granted leave to amend in order to state a cause of action.

Plaintiff next claims that his amended complaint, counts I through IV, states a cause of action. The Civil Practice Act provides that "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet." (Ill. Rev. Stat. 1977, ch. 110, par. 42(2).) Nonetheless, a complaint to sufficiently state a cause of action to withstand a motion to dismiss must minimally allege facts sufficient to set forth the essential elements of the cause of action. Failure on the part of the plaintiff to do so cannot be remedied by a liberal construction of the pleadings. *Fanning v. LeMay* (1967), 38 Ill. 2d 209, 230 N.E.2d 182; *Woodill v. Parke Davis & Co.* (1978), 58 Ill. App. 3d 349, 374 N.E.2d 683.

Applying these principles to a determination of the sufficiency of count I, we conclude that this count does not state a cause of action. In count I, plaintiff alleges that: (1) he was the holder of a promissory note in the principal amount of $215,000, executed by K&L and guaranteed by Kolton; (2) Kolton pledged to plaintiff 12,500 shares of K&L common stock, which was 50% of the voting stock of K&L, as collateral security for his guarantee; (3) K&L was in default on the interest payments due on the note; (4) K&L assigned all of its assets to Chaitman, as assignee for the benefit of creditors of K&L; (5) all of the accounts receivable of K&L were to be liquidated and paid to the secured creditor, Commercial; (6) the accounts receivable had a face value of $2,700,000 and that K&L owed Commercial approximately $1,100,000[2]; (7) plaintiff relied upon the excess

---

[2] Exhibit C to the amended complaint discloses that K&L owed $1,350,000 to Commercial.

of value of the accounts and the net worth of K&L over and above any amounts K&L owed to Commercial; (8) Commercial took possession of the accounts and sold them to Nationwide for $872,000; (9) plaintiff was not given prior notice of the assignment for the benefit of creditors or the sale of the accounts receivable to Nationwide; (10) Nationwide, at the time of closing of the sale, had notice of plaintiff's claims; and (11) the assignment and sale wasted the value of plaintiff's collateral and resulted in the fraudulent disposition of assets by K&L to Commercial. Plaintiff further alleges that the assignment and sale were a breach of a duty of "good faith" owed by Commercial and other defendants to him. He sought an order setting aside the assignment from K&L to Chaitman, the sale from Commercial to Nationwide and for an accounting and costs.

The arguments of Chaitman, Commercial and Nationwide regarding the inadequacies of count I are persuasive. First, these defendants claim that this count alleges no legally recognized claim for relief against them. Specifically, their motion to dismiss states that: (1) count I alleges no wrongdoing against Chaitman, Commercial and Nationwide; (2) it alleges no grounds for setting aside the assignment; (3) an exhibit attached to the complaint reveals that notice of assignment was given plaintiff, but that there is no legal requirement that an assignment for the benefit of creditors requires for its validity prior notice to creditors; and (4) no prior notice need be given plaintiff with respect to sale of the assets of the debtor, K&L.

Defendants point out that although plaintiff alleges that he held 50% of the common stock of K&L, owned by Kolton, and delivered the shares to plaintiff endorsed in blank, these allegations did not make plaintiff hold a security interest in any asset of K&L. He did not allege that he had foreclosed his lien on the stock certificates and had taken title. Furthermore, even if he had foreclosed and taken title to the stock certificates, he would not have held a security interest in any asset of K&L; rather, he would have become a stockholder of K&L. Moreover, plaintiff was a creditor of K&L because he was the holder of a promissory note executed by K&L, but was only one of K&L's unsecured creditors since the note is not alleged to have been secured by any asset of K&L.

● 2 Plaintiff argues that as a holder of a security interest in Kolton's K&L common stock, he was entitled to advance notice of the assignment for benefit of creditors and that pursuant to the Illinois Business Corporation Act (Ill. Rev. Stat. 1977, ch. 32, par. 157.72), and based on principles of equity, he was entitled to be heard at the time of the vote of the board of directors of K&L which approved the resolution authorizing transfer of the assets of K&L. While shareholder approval of the assignment for the benefit of creditors was necessary under section 72 of the Illinois Business

Corporation Act, only shareholders of record were entitled to notice and had the right to vote on the assignment. Inasmuch as plaintiff did not allege that he was a shareholder or holder of record of K&L stock, there was no legal requirement that he receive prior notice or that he be entitled to vote with reference to the assignment. Count I, therefore, asserts no actionable wrong in regard to the assignment for the benefit of creditors.

■■ Additionally, plaintiff alleges that he was not given notice of the sale of the accounts receivable to Nationwide. The Illinois Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—504), however, specifies that notice of sale of the collateral is required to be given only to secured creditors "from whom the secured party has received * * * written notice of a claim of an interest in the collateral." (Ill. Rev. Stat. 1977, ch. 26, par. 9—504(3).) Consequently, Commercial was not required to give notice to plaintiff, an unsecured creditor.

■■ In addition, on October 26, 1977, one day prior to the consummation of the sale, plaintiff appeared before the court and sought to restrain Commercial's sale of the accounts receivable, and during the hearing some of the details of the sale were revealed. Thus, the trial court was aware that plaintiff had prior notice of the sale of collateral. The court, therefore, could take judicial notice that plaintiff had advance notice of the sale and disregard his allegation in the pleading that he lacked prior notice. (*Deasey v. City of Chicago* (1952), 412 Ill. 151, 105 N.E.2d 727.) We therefore hold that count I was correctly dismissed.

■■ In count II, plaintiff incorporated the allegations of count I and contends that the facts and circumstances set forth constitute a cause of action in common law fraud perpetrated upon him in the disposition of all of the assets of K&L for the benefit of defendants. We disagree. The allegations in the amended complaint do not set forth any relationship between defendants other than buyer and seller. Nor are there allegations of any untrue statements or omissions of material fact made by Chaitman, Commercial or Nationwide to plaintiff or an allegation of any justifiable reliance by plaintiff. We can find no fraud that can be inferred from the allegations set forth. In determining whether the allegations of the amended complaint set forth a cause of action in fraud, the trial court could have properly considered the exhibit attached to the complaint by plaintiff, which consisted of a letter from Chaitman sent in July of 1977 to all general creditors of K&L stating that Commercial held a security interest in all of the inventory and accounts receivable of K&L and due to the precarious nature of the accounts receivable there would be little chance that the general unsecured creditors would receive a dividend recovery.

Plaintiff cites several cases in support of his fraud claim that set forth

the general rule that a transfer of assets to friendly parties so as to prevent a creditor from executing on these assets is fraudulent and may be set aside. The cases, however, are inapposite to the present case since none of them involve the surrender of assets to a secured creditor pursuant to a valid security agreement and the subsequent sale by the creditor of that collateral. Therefore, we conclude that the trial court properly dismissed count II.

■■ Plaintiff posits that count III alleges a good cause of action for breach of a statutory duty of good faith pursuant to the Illinois Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, pars. 1—203 and 9—504). Again, we cannot agree. In count III, plaintiff includes the allegations of count I; however, none of plaintiff's factual allegations indicate a lack of "good faith" on the part of Chaitman, Commercial or Nationwide. We therefore find that count III does not state a cause of action for breach of "good faith" under the Illinois Commercial Code.

With respect to count IV, plaintiff alleges that the sale of K&L assets was commercially unreasonable in violation of the Illinois Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—504(3)), which requires that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable * * *." Specifically, plaintiff claims that the sale for an inadequate consideration, without notice to him, and the value of the accounts ($2,700,000) was not preserved. Plaintiff's interest in K&L accounts receivable is the right to receive an equal share with other unsecured creditors of any surplus value over and above the amount due Commercial.

■■■ Defendants allege in their motion to dismiss that the sale to Nationwide was judicially approved and consequently the sale as a matter of law was commercially reasonable. Section 9—507 of the Illinois Uniform Commercial Code provides in part:

"* * * A disposition which has been approved in any judicial proceeding * * * shall conclusively be deemed to be commercially reasonable * * *." (Ill. Rev. Stat. 1977, ch. 26, par. 9—507(2).)

In *Bryant v. American National Bank & Trust Co.* (N.D. Ill. 1976), 407 F. Supp. 300, the court construed this provision and ruled that the key to judicial approval was whether all parties had been given the opportunity to appear and voice their objections to a proposed sale. If the parties have had an opportunity for a thorough discussion of the sale's terms, and the sale was approved by the court, then it was conclusively deemed commercially reasonable, even though all aspects of the sale had not been discussed or considered by the court. We do not believe, however, that the holding in *Bryant* is controlling in the case at bar. In *Bryant*, the purpose of the hearing was to review the sale terms; however, in the present case

the record does not disclose a thorough opportunity for a discussion of the sale terms between Commercial and Nationwide at the hearing on the temporary restraining order. Nor does the denial of the temporary restraining order indicate judicial approval of the sale terms. Consequently, we agree with plaintiff's contention that the trial court erred in granting defendants' motion to dismiss count IV.

It is well settled that a motion to dismiss admits all facts properly pleaded in the complaint. (*Acorn Auto Driving School, Inc. v. Board of Education* (1963), 27 Ill. 2d 93, 187 N.E.2d 722; *Danaher v. Knightsbridge Co.* (1978), 56 Ill. App. 3d 977, 372 N.E.2d 862.) Moreover, our supreme court has repeatedly held that a cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiff to recover. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 380 N.E.2d 790.) We believe the allegations in count IV minimally state a cause of action that the sale was not made in a commercially reasonable manner under section 9—504 of the Code.

For the reasons stated, the portion of the order dismissing counts I, II and III of plaintiff's amended complaint is affirmed, and the portion of the order dismissing count IV is reversed. The cause will be remanded for further proceedings not inconsistent with the content of this opinion.

Affirmed in part; reversed in part and remanded.

LORENZ and MEJDA, JJ., concur.