2023 IL App (1st) 200779-U

SECOND DIVISION
March 28, 2023

No. 1-20-0779

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| PRO SAPIENS, LLC, | ) | |
| | ) | Appeal from the |
| Plaintiff, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | 19 L 12671 |
| INDECK POWER EQUIPMENT COMPANY, | ) | |
| | ) | Honorable |
| Defendant-Appellee | ) | Patrick J. Sherlock, and |
| | ) | Jerry A. Esrig, |
| (Emmanuel Jacob, Appellant). | ) | Judges Presiding |
| | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held*: Affirmed. Trial court did not err in re-entering Rule 219 sanctions against non-party.

¶ 2     In a prior opinion, *Pro Sapiens, LLC v. Indeck Power Equipment Co.*, 2019 IL App (1st) 182019 (*Pro Sapiens I*), we vacated a discovery sanction against Emmanuel Jacob, a non-party but the owner of plaintiff Pro Sapiens, because the circuit court had not obtained personal jurisdiction over Jacob *individually* before entering the judgment. In making this finding, we indicated that, had Indeck taken the appropriate steps to secure jurisdiction, it would have been free to seek sanctions. We remanded the matter for further proceedings.

¶ 3      Unsurprisingly, Indeck did exactly that on remand. Indeck served Jacob with a subpoena, on the record and in open court, and filed a motion to re-impose sanctions. The court then imposed the same sanctions as before. Jacob appeals, but we find no error and affirm.

¶ 4                                    BACKGROUND

¶ 5       As we noted in *Pro Sapiens I*, 2019 IL App (1st) 182019, ¶ 6, this case has an enormous and convoluted record. We laid out the facts and procedural background with as much brevity as possible then and attempt the same here.

¶ 6      Briefly: Indeck sells and rents industrial boilers to various companies, including oil refineries. Jacob, through Pro Sapiens (a company he owned with his wife), claimed he brokered two boiler sales between Indeck and Venezuela's state-owned oil and natural gas company, Petroleos de Venezuela, S.A. (PDVSA). Pro Sapiens, not Jacob—an important distinction—filed several lawsuits against Indeck, claiming the company failed to pay a 10% commission on those two sales.

¶ 7      During the litigation, Indeck sought to discover any communications that Jacob had with PDVSA and its employees. Long story short, Indeck concluded that Jacob had committed egregious discovery violations—most notably deleting e-mails before a court-ordered forensic review and then lying about their (non)existence. Indeck then sought discovery sanctions against not only plaintiff Pro Sapiens, but Jacob *individually*. Specifically, Indeck asked the court to dismiss Pro Sapiens's lawsuit and also enter significant monetary sanctions against both Pro Sapiens and Jacob.

¶ 8      The circuit court, recognizing the serious allegations against Jacob, told Pro Sapiens's counsel that the motion raised issues that needed a response. But counsel neither filed a response nor even appeared for the hearing on the motion. Without any response whatsoever, the court

was "left with [] a series of unrebutted contentions about the destruction of documents, about the destruction of e-mails, about the failure to produce information that is highly relevant to the case, a series of allegations, all supported by affidavit and other forensic information." The court granted the sanctions motion, dismissing Pro Sapiens's complaint and entering monetary sanctions against Pro Sapiens *and* Jacob individually. The court ordered Indeck to file a petition to finalize the amount of sanctions. Indeck's petition requested $332,338.92 in attorney fees, expert fees, and costs.

¶ 9 Shortly after Indeck's petition was filed, Pro Sapiens (*not* Jacob) filed a motion to vacate the sanctions order. The motion argued that any delay in responding to the motion or attending the hearing was solely attributable to counsel—who claimed that he had been overwhelmed by several things, both personal and professional. But the court was not persuaded after it had already granted an extension to respond to the motion. The court found "no basis to vacate my prior ruling. I'm not going to vacate my prior ruling, and I'm not going to reconsider the order."

¶ 10 Two years after the court entered the sanctions order, it held the hearing "to determine what costs and fees, if any, will be awarded to Indeck, and the reasonableness of those fees." During the hearing, Pro Sapiens's counsel tried to revisit the court's order granting sanctions. For example, when Jacob was testifying, counsel tried to question him about whether he destroyed e-mails—again the basis for sanctions. Throughout the hearing, the court repeatedly refused to revisit the issue and emphasized that the only purpose of the hearing was to determine the amount of the sanctions. Two weeks after the hearing, the court granted Indeck's petition and levied $205,489.00 in attorney fees and $39,544.76 in expert costs against Indeck and Jacob.

¶ 11 Jacob, *pro se*, appealed the sanctions award on behalf of himself and Pro Sapiens—*Pro Sapiens I*. We found that we lacked jurisdiction to consider Jacob's *pro se* arguments on behalf

of Pro Sapiens, a separate entity that did not appeal the court's judgment. *Pro Sapiens I*, 2019 IL App (1st) 182019, ¶¶ 61, 63.

¶ 12     As to Jacob individually, we vacated the sanctions order on the narrow but important ground that Jacob was not a party to the case and had never been served with process. *Id.* ¶ 76. Nor did we find that Jacob had voluntarily submitted to the court, thus waiving an objection to personal jurisdiction. See *Id.* ¶¶ 91-94. And even if he had submitted to jurisdiction when he did appear before the court, that later appearance would not have validated the previously entered void order. *Id.* ¶ 96. We made it clear, however, that "[h]ad Jacob been served with a subpoena at any time before or in connection with the motion for Rule 219 sanctions, the trial court would have acquired personal jurisdiction over him." *Id.* ¶ 76. In the end, the law required us to vacate the sanctions order against Jacob. *Id.* ¶ 100.  We remanded the case for further proceedings. *Id.*

¶ 13     Which brings us to the start of this case: on remand, in accordance with our decision, Indeck served Jacob with a subpoena and copy of their motion for sanctions in open court on December 12, 2019. With Jacob now served, Indeck moved to re-enter sanctions against Jacob. (The record also shows that Indeck served Jacob with a summons in connection with the motion to re-impose sanctions.)

¶ 14     In response, Jacob filed a "motion to dismiss" for lack of jurisdiction. He primarily argued that the court lacked subject-matter jurisdiction over the motion for sanctions because the case was "final" when after the claims brought by Pro Sapiens, the only party-plaintiff, were dismissed. He claimed that Indeck could not "piggyback onto the prior litigation because the only litigation that this trial court had jurisdiction over, that of the parties consisting of Indeck and Pro Sapiens, has concluded."

¶ 15    After briefing, the court denied Jacob's "motion to dismiss" and ordered briefing on Indeck's motion for sanctions. As he did with the initial motion for sanctions, Jacob did not initially file a separate response. Again noting the lack of response, the court granted the motion to reinstate sanctions on April 28, 2020. Within a week of that order, Jacob filed a motion for leave to file a response *instanter* and for the court to reconsider its order.

¶ 16    While those motions were pending, Jacob filed a premature notice of appeal challenging the court's imposition of sanctions. Recognizing this court's lack of jurisdiction, we granted Indeck's motion to stay proceedings until the motions to reconsider could be resolved. The circuit court ultimately denied both the motion to file a late response and the motion to reconsider. Pursuant to Illinois Supreme Court Rule 303(a)(2) (eff. July 1, 2017), Jacob's premature notice of appeal then became ripe.

¶ 17                              ANALYSIS

¶ 18    Before this court, Jacob—again *pro se*—challenges the court's reimplementation of sanctions for several reasons. But before we get to his arguments, we must address which arguments are properly before us and which are not.

¶ 19                                 I

¶ 20    We will start with the easiest question to resolve. In this appeal, among other things, Jacob challenges the dismissal of Pro Sapiens's complaint; orders of July 25, 2018 and August 16, 2018; and evidentiary rulings by the court in the July 2018 hearing. We agree with Indeck that these orders are not properly before us.

¶ 21    Those rulings impacted Pro Sapiens, the corporate entity and party-plaintiff, not Jacob personally. Jacob lacks the ability to represent the corporate entity as a non-attorney, *pro se* litigant, as we previously ruled in *Pro Sapiens I*, 2019 IL App (1st) 182019, ¶¶ 38-45. See

*Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 17, 20 (corporations must be represented by counsel in legal proceedings). We thus dismissed the portion of the previous appeal as to any claims belonging to Pro Sapiens that Jacob attempted to raise on its behalf. *Pro Sapiens I*, 2019 IL App (1st) 182019, ¶¶ 63, 100. The result of our dismissal was that those orders remained final judgments, "as if no appeal had been taken." Ill. S. Ct R. 369(b) (eff. July 1, 1982). We made it clear there that the only issue properly before us was the order of sanctions directed at Jacob individually. See *Pro Sapiens I*, 2019 IL App (1st) 182019, ¶ 65 ("this issue, and only this issue, is properly before us."). So we will not review those orders in this appeal, either.

¶ 22    That leaves the arguments that comprise Jacob's substantive challenge to the April 28 sanctions order. They fall into two categories. First, Jacob filed a "motion to dismiss" Indeck's motion for re-entry of sanctions, raising three arguments. Those arguments are properly before us.  Jacob's notice of appeal identifies the order denying the "motion to dismiss" as an order he is challenging—the March 11, 2020 order. Indeck does not argue otherwise.

¶ 23    The other category of substantive arguments raised on appeal were raised below for the first time in Jacob's motion for reconsideration. Recall that Jacob did not file a timely response to the motion for sanctions and then, after the April 28, 2020 sanctions order, he filed a motion to file a late response and a motion for reconsideration—both of which were denied nearly a year later on March 19, 2021.

¶ 24    Indeck suggests that we lack jurisdiction to consider those legal arguments, because "Jacob has not appealed any order entered after April 28, 2020, including any order entered in connection with his motion for reconsideration or his motion for leave to file a response." But our jurisdiction is proper. Under the procedural posture here, Jacob was not required to explicitly

identify the March 19, 2021 order denying reconsideration in his notice of appeal; his appeal of that order was implied by rule.

¶ 25    When a party like Jacob files a premature notice of appeal—after a final judgment but before the postjudgment motion to reconsider has been adjudicated—the notice of appeal becomes effective when the court disposes of the postjudgment motion to reconsider. Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017). And if, as here, the "postjudgment motion is denied, an appeal from the judgment is *deemed to include* an appeal from the denial of the postjudgment motion." (Emphasis added.) *Id*.; see also Ill. S. Ct. R. 303, Committee Comments (rev. Mar. 16, 2008) ("Note that under subparagraph (a)(2), there is no need to file a second notice of appeal where the postjudgment order simply denies the appellant's postjudgment motion.").

¶ 26    But there is another reason we will not consider the substantive arguments raised by Jacob in his motion to reconsider—they are forfeited. As noted, besides the jurisdictional attacks he raised in his "motion to dismiss," Jacob did not file any timely response to the motion for sanctions, missing the deadline set by the court's briefing schedule. His motion to reconsider raised issues that he surely could have raised in a timely response; he is not permitted to hold them back and spring them on the court post-judgment. See *Tafoya-Cruz v. Temperance Beer Co., LLC*, 2020 IL App (1st) 190606, ¶ 87 (" '[I]t is well-settled that one may not raise a legal theory for the first time in a motion to reconsider.' ") (quoting *Holzer v. Motorola Lighting, Inc.*, 295 Ill. App. 3d 963, 978 (1998)). That is why our supreme court has emphasized that "[a]rguments raised for the first time in a motion for reconsideration in the circuit court are forfeited on appeal." *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36.

¶ 27    So the only issues properly before us are the arguments raised by Jacob in the pleading he styled a "motion to dismiss" the motion for re-entry of sanctions. There are three, all of a

jurisdictional variety: (1) the court lacked jurisdiction to hear the motion for sanctions, as there was no longer a case pending; (2) the court could not retroactively validate the prior sanctions order; and (3) Jacob was a non-party not subject to sanctions.

¶ 28                                    II

¶ 29     First, Jacob claims that the court did not have the authority to re-impose sanctions on remand. His logic is that Pro Sapiens was the only party to the case; its claims had been dismissed; so there was no case in which the circuit court could adjudicate the sanctions motion.

¶ 30     That argument is based on a fundamental misunderstanding of the effect of our prior judgment. We did not determine that sanctions against Jacob were inappropriate for any reason other than a personal jurisdictional defect. There was no decision on the merits of the sanctions order. We only found that "because Jacob, a non-party to this case, was never officially served with process via a subpoena, the trial court never acquired personal jurisdiction over him. We have no choice but to vacate that portion of the court's sanction order as void for lack of jurisdiction." *Pro Sapiens I*, 2019 IL App (1st) 182019, ¶ 87.

¶ 31     We did not outright vacate or reverse the judgment; we vacated it and remanded the matter to the circuit court "for any further proceedings." See *id*. ¶ 100. That was our mandate to the trial court. And our mandate defined the trial court's jurisdiction, if you will—its authority to act. *Fleming v. Moswin*, 2012 IL App (1st) 103475-B, ¶ 28 (the " 'mandate vests a trial court with jurisdiction only to take action that complies with the reviewing court's mandate.' ").

¶ 32     As Indeck notes, we gave the circuit court no specific instructions, which meant the circuit court was called upon to  " 'examine the opinion and determine what further proceedings would be consistent with the opinion.' " *Fleming v. Moswin*, 2012 IL App (1st) 103475-B, ¶ 28 (quoting *People ex rel. Bernardi v. City of Highland Park,* 225 Ill. App. 3d 477, 482 (1992)).

Here, with the remainder of the case completed, a remand could *only* mean relitigating the motion for sanctions after acquiring personal jurisdiction over Jacob. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994) (court may enter any order it deems just, including remand to circuit court).

¶ 33    So any notion that the trial court lacked jurisdiction—authority to act—on the motion for re-entry of sanctions is meritless.

¶ 34                                    II

¶ 35    Nor do we agree with Jacob that the court's re-entry of sanctions offended the rule against retroactive jurisdiction. See *Mitchell*, 2014 IL 116311, ¶ 43. That rule merely provides that "[a] party who submits to the court's jurisdiction does so only prospectively and the appearance does not retroactively *validate orders entered prior to that date.*" *Id.* (emphasis added.) (internal quotation marks omitted.)

¶ 36    It is undisputed that Indeck served Jacob with a subpoena (as well as a summons, out of an abundance of caution) before presenting the motion for re-entry of sanctions. These were precisely the " 'authority-asserting measure[s]' " the Supreme Court has identified as necessary to secure personal jurisdiction over a non-party. *Pro Sapiens I*, 2019 IL App (1st) 182019, ¶ 75 (quoting *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)).

¶ 37    So the court acquired personal jurisdiction over Jacob, who was given full and fair notice and an opportunity to litigate the motion for re-entry of sanctions, *before* issuing the sanctions order. The rule against retroactive jurisdiction was not disturbed.

¶ 38                                    III

¶ 39    Finally, we can quickly resolve Jacob's last preserved challenge: that he, as a non-party, could not be sanctioned. Of course he could be. Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) specifically allows sanctions against "a party, or any person at the instance of or in

collusion with a party." See also *Dolan v. O'Callaghan*, 2012 IL App (1st) 111505, ¶ 44 (directly refuting argument that sanctions are limited to parties).

¶ 40    It should come as no surprise that Jacob easily falls within the category of sanctionable non-parties.  As we acknowledged, he was the driving force behind Pro Sapiens and was obviously aware of the litigation. *Pro Sapiens I*, 2019 IL App (1st) 182019, ¶¶ 77-78. He is the individual who personally swore that Pro Sapiens's discovery responses were complete. See Ill. S. Ct. R. 214(c) (eff. July 1, 2018) (affidavit of complete production); Ill. S. Ct. R. 216(c) (eff. July 1, 2014) ("sworn statement" for requests to admit). And he personally committed these egregious discovery violations.

¶ 41    As we reject the only arguments Jacob properly preserved for review, we find no error in the trial court's re-entry of sanctions.

¶ 42                                    CONCLUSION

¶ 43    The judgment of the circuit court is affirmed.

¶ 44    Affirmed.